IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CTCOA, LLC d/b/a OLYMPIC AVIATION | § § | |
| *Plaintiff,* | § § | Civil Action No. 4:22-cv-03297 |
| v. | § § | |
| NSL HOLDINGS, INC. d/b/a NSL AEROSPACE | § § | JURY TRIAL DEMANDED |
| *Defendant.* | § § § | |

## COMPLAINT

Plaintiff CTCOA, LLC d/b/a Olympic Aviation ("Olympic" or "Plaintiff") files this Complaint against Defendant NSL Holdings, Inc. d/b/a NSL Aerospace ("NSL" or "Defendant") and in support states as follows:

### I.   NATURE OF THE CASE

1.     Though this action, Olympic seeks the immediate return of its confidential information and trade secrets improperly taken by Defendant NSL and Olympic's former employees Edward Chiao and Peter Pi ("Former Employees") in the leadup to the Former Employees' recent resignation from Olympic to join NSL.

2.     The confidential information and trade secrets at issue in this case include hundreds of pages of data and printouts from Olympic's confidential enterprise resource planning ("ERP") system. These documents include highly sensitive customer lists, detailed customer and vendor contact information, pricing information, profit margin information, years of sales and purchase order histories, and product sourcing information that Olympic has compiled over many years and that Olympic uses to establish its competitive edge in the marketplace.

3.      NSL is a direct competitor to Olympic. Its unlawful and unauthorized possession of Olympic's confidential information and trade secrets poses immediate and irreparable harm to Olympic because this information can be used to replicate Olympic's exemplary product sourcing abilities, target Olympic customers, and undermine Olympic on pricing and sourcing of goods in the marketplace.

4.      Olympic respectfully requests that the Court immediately enjoin NSL and the Former Employees from using this information, order the return of the information, and grant Olympic monetary damages and other relief to account for this misconduct and other unlawful actions by NSL that have harmed Olympic.

## II.    PARTIES

5.      Olympic is a Florida limited liability company with its principal place of business at 16818 Marquardt Ave., Cerritos, California 90703.

6.      NSL is a Texas corporation with its principal place of business at 33110 Old Hempstead Road, Magnolia, Texas 77355.

## III.    JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Olympic asserts a claim that arises under the laws of the United States, namely, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*.

8.      This Court has supplemental jurisdiction over Olympic's state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Olympic's federal claim that they form part of the same case or controversy and derive from a common nucleus of operative fact.

9.      This Court has personal jurisdiction over NSL because NSL is a resident of Texas and because NSL conducts a substantial amount of business in Texas.

10.     Venue in this district is proper under 28 U.S.C. § 1391 because NSL resides in this District, because a substantial part of the events or omissions giving rise to Olympic's claims occurred within this District, because a substantial part of property that is the subject of the action was sent to NSL employees in Texas and therefore is situated in this District, and because NSL is subject to the Court's personal jurisdiction in the District.

## IV.     FACTUAL ALLEGATIONS

### A.  Olympic's Business

11.      Plaintiff, Olympic, is an aerospace and defense exporter. Olympic sells parts, chemicals, and raw materials to customers in the aerospace industry.

12.     Although Olympic does some manufacturing in-house, most of the goods Olympic sells are sourced from third-party vendors. In other words, Olympic purchases goods from third-party vendors in order to fulfill customer orders.

13.     Olympic is well known in the industry for being able to "source" hard-to-find goods, meaning being able quickly to find the correct identifying information for a requested product and being able to locate a vendor that can supply the product in a timely and cost-effective manner.

14.     This capability is important because product identifiers (e.g., part numbers) in Olympic's industry often change, as do vendors for a given product.

15.     Olympic's ability to source products is one of its key competitive advantages in its industry space.

### B.  Olympic's ERP System

16.     Olympic stores its sourcing information in its ERP system.

17.     The ERP is an electronic database that contains a large amount of information, including but not limited to the following:

18.     *Sales Order Information*. The ERP contains many years of sales order information, including records of all sales Olympic has made to customers since at least as early as 2008. This information includes, for each sale, sales order number, account number, purchase order number, customer name, customer contact information, relevant dates, including date of order and shipment, shipping information, part number and description, the Olympic employee who handled the sale, order status, unit pricing, and total price.

19.     *Purchase Order Information.* The ERP also contains many years of purchase order information, including records of all purchases Olympic has made to fulfil customer orders since at least as early as 2008. This information includes, for each purchase order, purchase order number and other reference numbers, order and shipment dates, vendor names, vendor contact information, the Olympic employee who handled the sale, shipping information, order status, part number and description, unit price, and total price. It also contains information about back orders.

20.     Each time Olympic completes a transaction, it enters data from the transaction into the ERP.

21.     In addition, each time Olympic sells customer product not already in Olympic's ERP system, it adds additional information to an already robust database.

22.     For a product not already in Olympic's ERP, the sourcing process involves researching the product in question to identify the correct part number and the best vendor. Olympic uses a variety of sources and methods to complete this research, including multiple paid databases and other research.

23.     The ERP gives Olympic a significant competitive advantage because Olympic can use the ERP to quickly source a wide variety of goods, using many years of past transaction history and sourcing research.

4

24.     The ERP is the lifeblood of Olympic's business.

25.     Olympic treats the information contained within the ERP as confidential, trade secret information.

26.     Olympic takes multiple overlapping measures to protect the information stored in the ERP, including the following:

   a.  First, the ERP is password protected. Each Olympic employee with a need to access the system is issued a unique password to access the system.

   b.  Second, the ERP can only be accessed from Olympic-issued computers or through a VPN (virtual private network) for select employees, which is also password-protected. The passwords for Olympic computers and VPN are different than the passwords for the ERP. The company in its sole discretion restricts or removes access under certain circumstances.

   c.  Third, access to the ERP system is restricted to the subset of Olympic employees with a need to access the system within the scope of their employment. Such employees include, for example, sales and finance employees.

   d.  Fourth, even for employees permitted to access the ERP system, access is restricted on the basis of need, such that employees can only access the information in the ERP they need to perform their jobs. For example, although employees in the shipping department can access some portions of the ERP, they are not permitted to access financial information because they do not have a need for that information to fulfil their job responsibilities.

e. Fifth, Olympic requires all employees, including employees with access to the ERP, to execute a confidentiality agreement covering information within the ERP upon hiring.

f. Sixth, Olympic's employee handbook includes a confidentiality policy.

g. Seventh, Olympic instructs employees during the onboarding process about the importance of confidentiality and complying with Olympic's confidentiality policy and agreement.

27. Information in Olympic's ERP is subject to its confidentiality policy and confidentiality agreement.

28. It is common knowledge within the industry that information of the kind contained in Olympic's ERP is confidential and proprietary and not to be shared outside the company, and certainly not to be shared with competitors.

**C. Edward Chiao and Peter Pi**

29. Edward Chiao is a former Sales Manager at Olympic.

30. Mr. Chiao started at Olympic in June 2020.

31. Peter Pi is a former Regional Sales Manager at Olympic.

32. Mr. Pi started at Olympic in June 2020.

33. As part of their onboarding process with Olympic, both Mr. Chiao and Mr. Pi were required to review Olympic's Employee Handbook in detail.

34. One provision of the Employee Handbook concerns Confidentiality and states as follows:

**CONFIDENTIALITY**

During the course of employment with CTCOA, employees may be given, or have access to, confidential and/or trade secret information pertaining to CTCOA's business. All confidential information is disclosed or revealed to employees with

the understanding that *such information is considered to be secret and proprietary to CTCOA and is a valuable commercial asset of the Company*. As such, during and subsequent to the time of employment with CTCOA, employees are not to make use whatsoever, directly or indirectly, of CTCOA's confidential information except for the purposes specified by the Company or required to perform their job for CTCOA. *Employees may not remove such information from CTCOA in any form or medium*, nor may they use such information in connection with work performed for their personal benefit or for the benefit of any other person, firm, or corporation. *Employees may not reveal, disclose, identify, or otherwise provide confidential information to any other person, firm, corporation, or other entity, including the general public*.

Exhibit A (Employee Handbook) at 32 (emphasis added).

35.     As part of the onboarding process, Olympic instructed both Former Employees that Olympic employees are prohibited from sending customer information, vendor information or sales data to any external source.

36.     The Former Employees were also instructed that they should be particularly mindful of not sending any such information to competitors, vendors or customers, and that to the extent the Former Employees wanted to send any of this information to an external source, they needed obtain authorization from Olympic Aviation's Chief Executive Officer or Chief Operating Officer.

37.     After the onboarding process, both Edward Chiao and Peter Pi executed Confidentiality Agreements with Olympic Aviation. See Exhibits B (Chiao Confidentiality Agreement) and C (Pi Confidentiality Agreement). Both of those agreements state that they:

understand that during the course of my employment with CTCOA, LLC ("CTCOA"), I may have access to and become acquainted with information of a confidential, proprietary or secret nature which is or may be either applicable or related to the present or future business of CTCOA, its research and development, or the business of its customers. Such confidential technical and commercial information includes, but is not limited to, reports, quotations, price schedules, devices, inventions, processes, compilations of information, records, specifications and information concerning customers, agents and vendors.

Exhibit B (Chiao Agreement); Exhibit C (Pi Agreement).

38.     Mr. Pi submitted a letter of resignation on August 15, 2022.

39.     Mr. Chiao submitted a letter of resignation on August 16, 2022.

40.     Upon information and belief, both Mr. Pi and Mr. Chiao left Olympic to join NSL.

**D.  NSL Aerospace**

41.     NSL is a distributor of aerospace adhesives and sealants.

42.     NSL is a customer and supplier to Olympic.

43.     NSL is a direct competitor to Olympic.

**E.  The Employees' Theft of Confidential Information**

44.     In the leadup to their departure from Olympic, the Former Employees took large amounts of Olympic's confidential information, much of it from Olympic's ERP system.

45.     The Former Employees shared much, if not all, of this information with NSL.

46.     Upon information and belief, the Former Employees and NSL are currently using this information or intend to use this information to undermine Olympic's competitive position in the marketplace.

47.     On July 20, 2022, at 4:01 p.m., Mr. Pi exported a PDF from Olympic's ERP system entitled "2021.pdf" This document is a Sales Order Journal. It is 305 pages long. It shows detailed information about sales by Mr. Pi, Mr. Chiao, and two other members of their team from 2021 by customer name, part number, part description, dates of order and shipment, and pricing information. In essence, 2021.pdf shows each sale Mr. Chiao, Mr. Pi, or their team members were involved with in 2021, with part-specific information, pricing, and customer contact information. This is highly confidential material of Olympic. There is no legitimate reason for any sales employee of Olympic to generate a report like this. Mr. Pi emailed this document to his personal gmail account July 20, 2022 at 5:11 p.m. Mr. Pi did not have authorization to download or share this information with NSL.

48.     On July 20, 2022, at 3:50 pm, Mr. Pi exported a PDF from Olympic's ERP system entitled "2022.pdf" This document is another Sales Order Journal. It is 232 pages long. IT shows detailed information about sales by Mr. Pi, Mr. Chiao, and two other members of their team from 2022 by customer name, part number, part description, dates of order and shipment, and pricing information. In essence, 2021.pdf shows each sale Mr. Chiao, Mr. Pi, or their team members were involved with in 2021, part-specific information, pricing, and customer contact information. This is highly confidential material of Olympic. There is no legitimate reason for any sales employee of Olympic to generate a report like this. Mr. Pi emailed this document to his personal gmail account on July 20, 2022 at 5:01 p.m. Mr. Pi did not have authorization to download or share this information with NSL.

49.     On July 21, 2022, NSL emailed Mr. Chiao's personal email account asking for a quote of a CN44 Cleaning Solvent. This request represented a request to source a product for NSL using Olympic's confidential and trade secret sourcing information. Mr. Chiao did not have authorization to do so.

50.     On July 22, 2020, NSL asked Mr. Chiao to assist with an aircraft on the ground ("AOG") request, stating "anything you can do is greatly appreciated." Two days later, NSL sent the request to both Mr. Chiao's work email and personal email saying the people at AOG are "relentless" and asking for assistance. This request represented a request to source a product for NSL using Olympic's confidential and trade secret sourcing information. Mr. Chiao did not have authorization to do so.

51.     On July 26, 2022 at 8:10 a.m., Mr. Pi exported at PDF from Olympic's ERP system entitled "1.pdf" This document is a Sales Order Register. It is 263 pages long. It shows detailed information about sales by Mr. Pi, Mr. Chiao, and three other members of their team from between

2020 and 2022 by customer name, dates of order and shipment and total amount invoiced. In essence, 1.pdf shows each sale Mr. Chiao, Mr. Pi, or their team members were involved with during their time at Olympic, including customer name and contact information. This is highly confidential material of Olympic. There is no legitimate reason for any sales employee of Olympic to generate a report like this. Mr. Pi emailed this document to his personal gmail account on July 26, 2022 at 9:16 a.m. Mr. Pi did not have authorization to download or share this information with NSL.

52.     On July 26, 2022, at 10:34 a.m. Mr. Pi sent Powell Simbulan of NSL a message stating that "I was testing to see if I can attach a PDF or something. I don't think I can so I just send another Share Link for PDF. Let me know if you didn't receive the link."

53.     On July 26, 2022, Powell Simbulan of NSL shared a document with Mr. Chiao and Mr. Pi and invited them to "comment" on it. Moments later, it shows Mr. Pi sharing documents. Documents obtained from Mr. Chiao's computer show that Mr. Pi shared the following documents with NSL:

   a.   A document titled "1.pdf" on July 26, 2022 at 9:57 a.m.

   b.   A document entitled "E Chemical.pdf" on July 26, 2022 at 3:59 p.m.

   c.   A document entitled "P Parts.pdf" on July 26, 2022 at 3:58 p.m. This document was exported by Mr. Pi from Olympic's ERP at 2:44 p.m. on July 26, 2022. This document is a Purchase Order Register. It contains 87 pages of information on purchases that Olympic has made to source customer orders. In essence, P Parts.pdf shows each purchase order Mr. Pi was involved with during his time working at Olympic, including purchase order number, reference numbers, vendor name, vendor contact information, relevant dates, including order date and delivery date,

order status, quantity, and price. This is highly confidential material of Olympic. There is no legitimate reason for any sales employee of Olympic to generate a report like this. Mr. Pi did not have authorization to download or share this information with NSL.

54.    On August 1, 2022, Mr. Pi modified a spreadsheet entitled "Peter Group – Open SO through July 13, 2022.xlsx." Upon information and belief, this document was generated from Olympic's ERP system. This document shows hundreds of service orders submitted by scores of customers, the quantities of items ordered as well as the quantities of items backordered. This is highly confidential material of Olympic. Mr. Pi did not have authorization to download or share this information with NSL.

55.    On August 5, 2022, Mr. Pi emailed a job application from his personal gmail account to NSL.

56.    On August 12, 2022, at 9:11 a.m. Mr. Pi emailed a document to his personal gmail account titled "1234." It contains a list of many of Olympic's customers from Korea and other entities operating in Southeast Asia. This is highly confidential material of Olympic. Mr. Pi did not have authorization to download or share this information with NSL.

57.    On August 12, 2022, at 9:11 a.m. Mr. Pi emailed another document to his personal gmail account titled "1234." It contains an expanded list of many of Olympic's customers. This is highly confidential material of Olympic. Mr. Pi did not have authorization to download or share this information with NSL.

58.    An undated native Excel document entitled "DataExport" which shows details of hundreds of Olympic's customer transactions that occurred in July and August 2022 was found in Mr. Chiao's web browser download history. This file contains detailed shipping information for

Olympic's customers. It was downloaded to Mr. Chiao's work computer on August 16, 2022, about 30-minutes before he left the office for the day. This file contained highly confidential information. Mr. Chiao did not have authorization to download or share this information with NSL.

### F.  Harm to Olympic's Business

59.     Virtually all of the information contained in the documents described above is confidential and very sensitive.

60.     This information gives anyone who possesses it virtually all of the information they need to undermine Olympic's business relationships and competitive position in the marketplace, including detailed product sourcing information; a list of Olympic's customers and detailed contact information for those customers; a list of Olympic's vendors and detailed contact information for those vendors; detailed pricing information revealing sale price, source price, and profit margins; and a detailed history of Olympic's recent transactions.

61.     A competitor could use this information to source orders and also to systematically target Olympic customers and undercut Olympic on price. It took decades of work and research to compile many of the details contained in these documents.

62.     Upon information and belief, NSL and the Former Employees have used or plan to use this information to undermine Olympic's competitive position in the marketplace.

63.     Neither NSL nor the Former Employees have authorization from Olympic to do so.

64.     If Mr. Chiao, Mr. Pi, or NSL are permitted to retain the documents and information described above, it will cause Olympic immediate and irreparable harm.

65.     The magnitude of this harm is significant. Collectively, Mr. Chiao and Mr. Pi were involved with approximately 25% of Olympic's monthly sales revenues. As a result, the detailed reports they took for transactions they and their team worked on implicates roughly 25% of

Olympic's business, not to mention the information they took about customers and transactions with which they had no prior involvement.

**G.  Intent to Improperly Undermine Olympic**

66.    The document with the file name "NSL LA Discussion.docx" suggests that NSL, Mr. Chiao, and Mr. Pi intend to improperly undermine Olympic in the marketplace.

67.    This document appears to be an agenda that NSL, Mr. Chiao, and Mr. Pi created when discussing their plans for Mr. Chiao and Mr. Pi to leave Olympic. The document contains discussion of many aspects of the transition.

68.    One bullet point on the list reads "Tammy and Nina" business.

69.    This statement appears to reference Tammy Luu, who is a Chemical Sales Manager at Olympic, and Nina Settachai, who is a Chemical Account Manager at Olympic.

70.    From this agenda, it appears that Mr. Chiao, Mr. Pi, and NSL were planning to try to take business from Olympic currently managed by Ms. Luu and Ms. Settachai using Olympic's confidential information.

71.    Upon information and belief, NSL and/or the Former Employees have already contacted Olympic customers in an attempt to take Olympic's business and undermine Olympic's customer relationships using the confidential trade secret information taken from Olympic.

**H. NSL  and  the  Employees  Refusal  to  Return  Confidential Information**

72.    On August 26, 2022, counsel for Olympic informed NSL, Mr. Chiao, and Mr. Pi in writing of the fact that the Former Employees had taken Olympic's confidential information and demanded immediate return of that information along with other assurances. See Exhibit D.

73.    Olympic's correspondence to NSL informed NSL that both Mr. Chiao and Mr. Pi had signed confidentiality agreements with Olympic.

74.     To-date, NSL and the Employees have refused to return any of the information taken.

**I.   Recent Attempts to Use Information**

75.     NSL is already beginning to use the information taken by Mr. Chiao and Mr. Pi to Olympic's detriment.

76.     For example, on September 1, 2022 NSL employees sent two separate requests to source product orders to Mr. Chiao and Mr. Pi's Olympic email accounts.

77.     These requests were apparently sent to Mr. Chiao and Mr. Pi's Olympic email accounts by mistake because NSL sought to recall the messages multiple times in the eight minutes that elapsed after they were sent.

**J.   Theft of Goods**

78.     In April 2022 and again in August 2022, in response to customer orders, Mr. Chiao purchased product from third-party suppliers at Olympic's expense and then directed shipment of the product to NSL *at no charge.*

79.     Upon information and belief, Mr. Chiao and NSL did so in order for NSL to be able to fulfill the customer orders itself.

80.     Olympic's records show that Mr. Chiao manually altered the "bill to" and "ship to" fields in Olympic's ERP system, which are otherwise automatically populated, to facilitate these improper and unauthorized transactions.

**K.   Failure to Ship Perishable Product Supplied by NSL**

81.     In or about February 2022, Mr. Chiao purchased approximately $150,000 worth of perishable product from NSL for fulfillment of a customer order placed with Olympic.

82.     When this product arrived to Olympic's warehouses, Mr. Chiao failed to ship the product to Olympic's customer for months, causing the product to expire and rendering it unsaleable.

83.     These actions caused significant financial harm to Olympic.

84.     Upon information and belief, these actions were undertaken for the purpose of sabotaging Olympic's customer relationships for NSL's benefit.

85.     On information and belief, NSL fulfilled the order for the customer.

86.     Upon information and belief, Mr. Chiao, Mr. Pi and NSL and coordinated efforts to misappropriate other information or property from Olympic to harm Olympic and to enhance NSL's competitive position.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS
### (18 U.S.C. § 1831, *et seq.*)

87.     Olympic reasserts and incorporates by reference all paragraphs set forth above in the Complaint as if set forth fully herein.

88.     Olympic operates its business and sells its products in interstate and foreign commerce, transacting and doing business with customers, vendors, and others throughout the United States and internationally.

89.     Olympic conceives, designs, and develops trade secrets, as that term is defined under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), as amended (the "DTSA").

90.     Among other information, Olympic's trade secrets include, *inter alia*, customer lists; detailed customer contact information; sales order histories; purchase order histories; detailed product sourcing information including operative part numbers, suppliers, supplier contact information, and supplier pricing information; sales pricing information; and profit margin information.

91.     Olympic owns the above trade secrets.

92.     Olympic derives actual and potential economic value from its trade secrets not being generally known or readily ascertainable through proper means by another person or entity who could obtain economic value from the disclosure or use of the information.

93.     Olympic derives economic value from its trade secrets through devoting substantial resources, time, and investment to creating, developing, and using such information.

94.     Olympic also derives value from the competitive advantage its trade secrets provide, including the ability to quickly and accurately source a wide variety of products in response to requests for quotation from customers.

95.     As detailed in the foregoing allegations, Olympic has taken reasonable steps and precautions to safeguard its trade secrets and to limit and restrict others outside of Olympic from knowing, readily ascertaining, or using its trade secrets.

96.     Former Olympic employees Peter Pi and Edward Chiao willfully and maliciously engaged in various acts of misappropriation regarding Olympic's trade secrets, including but not limited to the improper acquisition, disclosure, and use of large volumes of data from Olympic's ERP system, including detailed customer sales data, detailed vendor purchase order data, part sourcing data, profit margin information, customer lists, customer contact information, vendor lists, and vendor contact information.

97.     Peter Pi and Edward Chiao engaged in these various acts of misappropriation of Olympic's trade secrets while acting under the direction, encouragement, supervision, or employment of Defendant NSL, such that NSL can be held liable for the acts of both Peter Pi and Edward Chiao.

98.     In addition, NSL worked with the Former Employees to misappropriate Olympic's trade secrets and confidential information and directly received this information.

99.     NSL and the Former Employees acquired Olympic's trade secrets through a breach of the confidential relationship between Olympic and the Former Employees.

100.    NSL and the Former Employees acquired Olympic's trade secrets through improper means.

101.    NSL and the Former Employees have received and used Olympic's trade secrets without authorization from Olympic.

102.    NSL and the Former Employees knew or had reason to know that their misappropriation of Olympic's trade secrets was improper.

103.    NSL and the Former Employee's misappropriation of Olympic's trade secrets was done willfully and maliciously. Upon information and belief, this misappropriation was premediated, intended to undermine Olympic in the marketplace, and continued even after Olympic provided written notice and a demand to return all misappropriated information.

104.    As a result of NSL's improper misappropriation, disclosure, and use of Olympic's trade secrets, NSL has violated the DTSA and harmed Olympic.

105.    As a direct and proximate result of NSL's violations of the DTSA, Olympic is entitled to actual damages; consequential damages; exemplary damages; unjust enrichment caused by the misappropriation of trade secrets that is not addressed in computing damages for actual loss; or, in the alternative, a reasonable royalty; as well as attorney's fees, costs, and expenses.

106.    NSL's DTSA violations have caused and will continue to cause Olympic irreparable harm that is not adequately remedied at law and that requires preliminary and permanent injunctive relief.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS
### (Tex. Civ. Prac. & Rem. Code § 134A, *et seq.*)

107.     Olympic reasserts and incorporates by reference all paragraphs set forth above in the Complaint as if set forth fully herein.

108.     Olympic does business in Texas.

109.     NLS also does business in Texas and is headquartered there.

110.     Olympic conceives, designs, and develops trade secrets, as that term is defined under the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.002(6), as amended (the "TUTSA").

111.     Among other information, Olympic's trade secrets include, *inter alia*, customer lists; detailed customer contact information; sales order histories; purchase order histories; detailed product sourcing information including operative part numbers, suppliers, supplier contact information, and supplier pricing information; sales pricing information; and profit margin information.

112.     Olympic owns the above trade secrets.

113.     Olympic derives actual and potential economic value from its trade secrets not being generally known or readily ascertainable through proper means by another person or entity who could obtain economic value from the disclosure or use of the information.

114.     Olympic derives economic value from its trade secrets through devoting substantial resources, time, and investment to creating, developing, and using such information.

115.     Olympic also derives value from the competitive advantage its trade secrets provide, including the ability to quickly and accurately source a wide variety of products in response to requests for quotation from customers.

116.    As detailed in the foregoing allegations, Olympic has taken reasonable steps and precautions to safeguard its trade secrets and to limit and restrict others outside of Olympic from knowing, readily ascertaining, or using its trade secrets.

117.    Former Olympic employees Peter Pi and Edward Chiao willfully and maliciously engaged in various acts of misappropriation regarding Olympic's trade secrets, including but not limited to the improper acquisition, disclosure, and use of large volumes of data from Olympic's ERP system, including detailed customer sales data, detailed vendor purchase order data, part sourcing data, profit margin information, customer lists, customer contact information, vendor lists, and vendor contact information.

118.    As then-current and now-former Olympic employees, Peter Pi and Edward Chiao had and continue to have obligations of confidentiality to Olympic.

119.    Mr. Pi and Mr. Chiao also had duties of loyalty to Olympic.

120.    Peter Pi and Edward Chiao's misappropriation of Olympic's trade secrets constitutes a breach of the confidential relationship between both Former Employees and Olympic.

121.    Peter Pi and Edward Chiao engaged in these various acts of misappropriation of Olympic's trade secrets while acting under the direction, encouragement, supervision, or employment of Defendant NSL, such that NSL can be held liable for the acts of both Peter Pi and Edward Chiao.

122.    In addition, NSL worked with the Former Employees to misappropriate Olympic's trade secrets and confidential information and directly received this information in Texas.

123.    NSL and the Former Employees acquired Olympic's trade secrets through a breach of the confidential relationship between Olympic and the Former Employees.

124.    NSL and the Former Employees acquired Olympic's trade secrets through improper means.

125.    NSL and the Former Employees have received and used Olympic's trade secrets without authorization from Olympic.

126.    NSL and the Former Employees knew or had reason to know that their misappropriation of Olympic's trade secrets was improper.

127.    NSL and the Former Employee's misappropriation of Olympic's trade secrets was done willfully and maliciously. Upon information and belief, this misappropriation was premediated, intended to undermine Olympic in the marketplace, and continued even after Olympic provided written notice and a demand to return all misappropriated information.

128.    As a result of NSL's improper misappropriation, disclosure, and use of Olympic's trade secrets, NSL has violated the TUTSA and harmed Olympic.

129.    As a direct and proximate result of NSL's violations of the TUTSA, Olympic is entitled to full compensatory and consequential damages, exemplary damages, and/or a reasonable royalty, as well as full attorney's fees, costs, and expenses.

130.    NSL's TUTSA violations have caused and will continue to cause Olympic irreparable harm that is not adequately remedied at law and that requires preliminary and permanent injunctive relief.

### COUNT III – MISAPPROPRIATION OF TRADE SECRETS
### (Cal. Civ. Code § 3426, *et seq*.)
### (in the alternative)

131.    Olympic reasserts and incorporates by reference all paragraphs set forth above in the Complaint as if set forth fully herein.

132.    Olympic's headquarters are in California and it conducts business there.

133.    Upon information and belief, NSL conducts business in California.

134.    Upon information and belief, the Former Employees are working with NSL to start an office in California.

135.    Olympic conceives, designs, and develops trade secrets, as that term is defined under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, as amended (the "CUTSA").

136.    Among other information, Olympic's trade secrets include, *inter alia*, customer lists; detailed customer contact information; sales order histories; purchase order histories; detailed product sourcing information including operative part numbers, suppliers, supplier contact information, and supplier pricing information; sales pricing information; and profit margin information.

137.    Olympic owns the above trade secrets.

138.    Olympic derives actual and potential economic value from its trade secrets not being generally known or readily ascertainable through proper means by another person or entity who could obtain economic value from the disclosure or use of the information.

139.    Olympic derives economic value from its trade secrets through devoting substantial resources, time, and investment to creating, developing, and using such information.

140.    Olympic also derives value from the competitive advantage its trade secrets provide, including cheaper production, domestic production, and higher quality products.

141.    As detailed in the foregoing allegations, Olympic has taken reasonable steps and precautions to safeguard its trade secrets and to limit and restrict others outside of Olympic from knowing, readily ascertaining, or using its trade secrets.

142.     Former Olympic employees Peter Pi and Edward Chiao willfully and maliciously engaged in various acts of misappropriation regarding Olympic's trade secrets, including but not limited to the improper acquisition, disclosure, and use of large volumes of data from Olympic's ERP system, including detailed customer sales data, detailed vendor purchase order data, part sourcing data, profit margin information, customer lists, customer contact information, vendor lists, and vendor contact information.

143.     Peter Pi and Edward Chiao engaged in these various acts of misappropriation of Olympic's trade secrets while acting under the direction, encouragement, supervision, or employment of Defendant NSL, such that NSL can be held liable for the acts of both Peter Pi and Edward Chiao.

144.     In addition, NSL worked with the Former Employees to misappropriate Olympic's trade secrets and confidential information and directly received this information in Texas.

145.     NSL and the Former Employees acquired Olympic's trade secrets through a breach of the confidential relationship between Olympic and the Former Employees.

146.     NSL and the Former Employees acquired Olympic's trade secrets through improper means.

147.     NSL and the Former Employees have received and used Olympic's trade secrets without authorization from Olympic.

148.     NSL and the Former Employees knew or had reason to know that their misappropriation of Olympic's trade secrets was improper.

149.     NSL and the Former Employee's misappropriation of Olympic's trade secrets was done willfully and maliciously. Upon information and belief, this misappropriation was

premediated, intended to undermine Olympic in the marketplace, and continued even after Olympic provided written notice and a demand to return all misappropriated information.

150.    NSL's conduct has harmed Olympic.

151.    As a result of NSL's improper misappropriation, disclosure, and use of Olympic's trade secrets, NSL has violated the CUTSA.

152.    As a direct and proximate result of NSL's violations of the CUTSA, Olympic is entitled to full compensatory and consequential damages; unjust enrichment caused by the misappropriation of trade secrets not taken into account in computing damages for actual loss; or, in the alternative, a reasonable royalty; as well as full attorney's fees, costs, and expenses.

153.    NSL's CUTSA violations have caused and will continue to cause Olympic irreparable harm that is not adequately remedied at law and that requires preliminary and permanent injunctive relief.

## COUNT IV – UNJUST ENRICHMENT
### (18 U.S.C. § 1831, *et seq*.)

154.    Olympic reasserts and incorporates by reference all paragraphs set forth above in the Complaint as if set forth fully herein.

155.    Olympic conferred a benefit upon NSL in the form of customer lists; detailed customer contact information; sales order histories; purchase order histories; detailed product sourcing information operative part numbers, suppliers and contact information, and pricing information; sales pricing information; and profit margin information.

156.    Olympic further conferred a benefit upon NSL in the form of free product shipped by the Former Employees to NSL.

157.    NSL received the above benefits at Olympic's expense.

158.    Under the circumstances, it is unjust for NSL to retain the above benefits without compensating Olympic.

159.    Olympic is entitled to disgorgement of the benefits received by NSL at Olympic's expense.

## COUNT V – CONVERSION

160.    Olympic reasserts and incorporates by reference all paragraphs set forth above in the Complaint as if set forth fully herein.

161.    Olympic is the owner of confidential and proprietary information discussed above, and had legal possession of the property.

162.    NSL has unlawfully removed physical and/or electronic property belonging to Olympic without Olympic's permission and used the property to compete, which constitutes wrongful exercise of dominion over Olympic's property.

163.    Olympic demanded that NSL return the property and cease all use of the property.

164.    NSL refused to return the property and refused to cease all use of the property.

165.    Olympic has suffered damages as a direct result of NSL's actions, entitling Olympic to actual damages plus interest, attorney's fees and costs, and statutory damages.

## COUNT VI – TORTIOUS INTERFERENCE
### (18 U.S.C. § 1831, *et seq.*)

166.    Olympic reasserts and incorporates by reference all paragraphs set forth above in the Complaint as if set forth fully herein.

167.    Olympic also has valid and enforceable confidentiality agreements with the Former Employees, that contain covenants restricting the Former Employees use of Olympic's information during and after their employment.

168.    Defendant NSL was aware of these obligations.

169.    Defendant NSL intentionally interfered with these obligations and Olympic's agreements with the Former Employees by encouraging, facilitating, and otherwise participating in the Former Employees improper disclosure to NSL and use of Olympic's proprietary trade secrets and confidential information.

170.    Defendant NSL interfered with these obligations and agreements through improper means, namely subterfuge and violations of established industry standards.

171.    As a result of NSL's tortious interference with the obligations and Olympic's contracts, Olympic has been injured irreparably.

172.    As a result of NSL's tortious interference with the obligations and Olympic's contracts, Olympic is entitled to full compensatory and consequential damages.

### COUNT VII – CIVIL CONSPIRACY

173.    Olympic reasserts and incorporates by reference all paragraphs set forth above in the Complaint as if set forth fully herein.

174.    NSL, Mr. Pi, and Mr. Chiao were members of a combination of two or more persons, the object of which was to accomplish: (1) misappropriation of Olympic's trade secrets; (2) the tortious interference with Pi and Chiao's obligations and agreements with Olympic; (3) the theft of Olympic's property; and (4) the conversion or unlawful possession of Olympic's property.

175.    NSL, Mr. Pi, and Mr. Chiao had knowledge of, and each agreed to take steps to accomplish the object of this combination.

176.    NSL, Mr. Pi, and Mr. Chiao committed unlawful, overt acts in furtherance of the object of this combination.

177.    Upon information and belief, Pi and Chiao undertook these actions with the support and encouragement of NSL and for NSL's benefit.

178.    Olympic suffered injury as a proximate result of these unlawful, overt acts. As a result, Olympic seeks all damages, including exemplary damages, to which it is entitled.

## PRAYER FOR RELIEF

Olympic respectfully requests that this Court grant the following relief:

i.    Entering judgment in Olympic's favor;

ii.    Issuing a preliminary and permanent injunction restraining NSL and anyone associated with NSL—including Mr. Pi and Mr. Chiao—from acquiring, using, or disclosing Olympic's trade secrets and other confidential documents, data, or information;

iii.    Issuing a preliminary and permanent injunction requiring NSL an anyone associated with NSL—including Mr. Pi and Mr. Chiao—to account for and return to Olympic all Olympic of its trade secrets or other confidential documents, data, or information it their possession, custody, or control, including any copies thereof;

iv.    Awarding full compensatory, consequential, punitive, exemplary, statutory, and/or multiple damages to Olympic in an amount to be determined at trial;

v.    Awarding Olympic its reasonable attorney's fees and costs incurred in this action;

vi.    Awarding Olympic pre- and post-judgment interest;

vii.    Ordering disgorgement of all wrongful gains realized by NSL;

viii.    Awarding Olympic a reasonable royalty for the theft of its trade secrets to the extent damages and other remedies are not adequate; and

ix.    Providing Olympic with such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Olympic hereby demands a trial by jury as to all issues so triable.

Dated:  September 26, 2022

Respectfully submitted,

*/s/ Benjamin F. Foster*
Benjamin F. Foster
Texas Bar No. 24080898
Southern ID No. 1998308
ben@fosteryarborough.com
**FOSTER YARBOROUGH PLLC**
917 Franklin Street, Suite 220
Houston, Texas 77002
Telephone: (713) 331-5254
Facsimile:  (713) 513-5202

**-AND-**

Charles W. Steese – *Pro Hac Vice*
    *Forthcoming*
Colorado Bar No. 26924
csteese@atllp.com
Alec Harris – *Pro Hac Vice Forthcoming*
Colorado Bar No. 47547
aharris@atllp.com
**ARMSTRONG TEASDALE, LLP**
4643 S. Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Facsimile:  (720) 200-0679

*Counsel for Plaintiff CTCOA, LLC d/b/a
Olympic Aviation*